KUHNS v. THE CHICAGO, MILWAUKEE & ST. PAUL R'Y CO.

1. **Tender:** WRITTEN OFFER TO PAY UNDER CODE, § 2105: OFFER MUST BE WITHOUT CONDITION. "An offer in writing to pay a particular sum of money is equivalent to the actual tender of the money." Code, § 2105. But this statute simply dispenses with the actual production of the money. In other respects the rule of the common law prevails, which requires that a tender, to be good, must be unconditional. And so, where defendant herein made a written offer, which was in effect: "I am willing to pay you the named sum to avoid litigation; it is not due you, but I am willing to pay," *held* not sufficient to make the offer equivalent to a tender.

2. **Evidence:** VALUE OF CATTLE: HERD BOOK. A printed herd book in which the cattle in question were registered, shown to be a standard authority among cattle-breeders, was competent evidence, under section 3653 of the Code, to show the breed and grade of the cattle.

*Appeal from Linn Circuit Court.*

WEDNESDAY, MARCH 18.

ACTION to recover double the value of three heifers which were killed by a train on the defendant's road at a place where the right to fence existed. The defendant pleaded a tender or offer in writing to pay a certain amount of money, and that the tender had been kept good by the payment of the money to the clerk. To this defense a demurrer was sustained, and on the trial there was a verdict and judgment for the plaintiff. The defendant appeals.

*John W. Cary, D. S. Wigge,* and *Sheean & McCarn,* for appellant.

*Herrick & Doxsee,* for appellee.

SEEVERS, J.—I.  The offer in writing to pay, or tender pleaded, is in these words:

"CHICAGO, MILWAUKEE & ST. PAUL RAILWAY—SPECIAL AGENT'S OFFICE.

" MILWAUKEE, April 18, 1882.

" *Phillip Kuhns, Esq., Centre Junction, Iowa:*   On the seventh inst, I wrote you, offering $200 in settlement of your claim for three heifers killed March 3, to which I have received no reply, but am in receipt this morning of thirty-day notice served upon our agent at Monticello, claiming $300 on account of above accident.  On a review of the papers connected with the case, I think it possible that I have underestimated the stock in question, and to avoid litigation I am willing to allow you $250, which I am confident represents the full value of the stock killed.  In fact, it would have been very difficult for you to have sold these heifers at that figure in cash.  We dislike litigation, knowing its cost to both parties.  If you prefer to bring an action against the company rather than accept the above offer, although it may cost us somewhat more than the amount named, I shall have the satisfaction of knowing that you have received much less than the $250, for you may be assured that we will fight the case bitterly.  I do not say this as a threat, but, feeling that I have now made all possible efforts to compromise the claim on a fair basis, if you force a law suit upon us, we shall feel it incumbent upon us to make it as expensive for you as possible."

It is provided by statute that " an offer in writing to pay a particular sum of money is equivalent to the actual tender of the money."  Code, § 2105.  This statute simply dispen-

ses with a production or actual tender of the money. This is the only effect. In other respects the rule of common law prevails. *Shugart v. Pattee*, 37 Iowa, 422. To make a valid tender at common law, the money must be produced and tendered unconditionally. If it be in full of all demands, or on condition that a receipt be given, or if it be offered by way of boon, with a denial that any debt is due, it cannot be regarded as sufficient. 2 Greenl. Ev. § 605; *Wood v. Hitchcock*, 20 Wend., 47; *Latham v. Hartford*, 27 Kan., 249; *Richardson v. Boston Chemical Laboratory*, 9 Metc., 42; *Tompkins v. Batie*, 11 Neb., 147; *Elderkin v. Fellows*, 60 Wis., 339.

The offer to pay was simply made to avoid litigation, and is accompanied with a threat. No amount is admitted to be due, but a willingness to pay a specified sum is expressed. If the tender had been made by the production of the money, accompanied with the words contained in the writing, we are clearly of the opinion that it would not have been a good tender at common law. In substance, the offer was: I am willing to pay you the named sum to avoid litigation; it is not due you, but I am willing to pay. The demurrer was correctly sustained.

II. It is stated in the petition that the heifers killed were "full blood of the short-horn Durham breed, registered in the twenty-second volume of the Herd Book." The plaintiff sought to introduce a printed volume of what purported to be the Herd Book in evidence, and he showed that the heifers were registered in the book in question, and that it was received and regarded by persons engaged in breeding cattle as a standard authority. The mode or manner in which cattle are registered in the Herd Book is immaterial, if the book is regarded as a standard authority; that is to say, if persons engaged in breeding stock rely on the book as an authority in their business; and this, we understand, was shown. The book offered in evidence was a printed copy, and we think it was admissible under section 3653 of the Code. It may be

regarded as an historical work of a particular subject; that is, of a particular breed of cattle. The instructions are correct, and the court did not err in admitting the evidence of certain persons as experts.

AFFIRMED.