[File No. 6276.]

JOSEPH O. HAYHURST, Respondent, v. MAUD HAYHURST, Appellant.

(256 N. W. 413.)

Opinion filed September 21, 1934.

*Sinness & Duffy* (*Cathleen Hayhurst Wheat,* of counsel) for appellant.

*John J. Kehoe,* for respondent.

Burr, Ch. J.  Plaintiff brings this action for divorce on the grounds of desertion.  The defendant denies any desertion, alleges that the parties separated mutually and to give the appearance of desertion that plaintiff might apply for a divorce, that there was a reconciliation and subsequent abandonment on the part of the plaintiff.  She then asks that "a decree of separation from bed and board may be entered by the Court, and that suitable provision be made therein for the support and maintenance of the defendant and for a suitable division of the property of the plaintiff."

The plaintiff denies any mutual separation and alleges that in 1919

the parties, with full knowledge on the part of the defendant of all of the property of the defendant and after a careful examination of all of his books and records, and with intent to desert plaintiff entered into a voluntary agreement for the division of property, satisfactory to the defendant, and that such agreement and contract has been fully and completely executed.

The court granted the plaintiff a decree of divorce on the ground of desertion and the defendant appeals.

There are three main issues of fact to be determined—did the defendant desert the plaintiff in 1919; was there a reconciliation, and condonation of such desertion if desertion existed; and, if the desertion was uncondoned has there been an unreasonable lapse of time before the commencement of the action?

The parties to this action were married in June 1899. The alleged desertion took place in September, 1919. From that time on the parties have lived apart. The summons and complaint were served on the defendant in Iowa on October 12, 1932.

The defendant alleges "that in the spring of 1932—the plaintiff and the defendant agreed that they would resume their marital relations" and thereafter "the plaintiff advised the defendant that he did not wish her to return—and that he thereupon wholly abandoned the defendant, and has refused to provide a home for her or to provide her with the necessities of life. . . ."

It is not necessary to review all of the testimony. Charges and recriminations are freely made and it is better to leave much of this unsaid.

Prior to 1915 the parties to this action lived in the states of Missouri and Illinois. Domestic difficulties arose between them from time to time; but whatever may be the merits of these controversies the differences were adjusted and in 1915 the parties removed with their two children to Rolette, North Dakota. Here plaintiff began his practice and maintained a hospital in which defendant rendered services in addition to discharging her duties as wife and mother. The reconciliation between the parties seems to have been complete at this time and from then on until May 1919.

In May 1919 the plaintiff left for Chicago for special surgical work in a hospital. The defendant remained in Rolette to take charge of

the patients and to superintend the remodeling of the hospital. The letters from Chicago written by plaintiff during this time to the defendant are quite affectionate. While in Chicago, an incident or incidents occurred involving a woman in Chicago, and which aroused the suspicions and jealousy of the defendant.

The dissensions which arose culminated in the execution of a contract and agreement as follows:

"This Agreement, Made and entered into this 22nd day of September, 1919, by and between Maud Hayhurst and Joseph O. Hayhurst, husband and wife: First:—That Maud Hayhurst shall have the custody of the children, Cathleen, age 16 years and Wendell age 11 years.

"Second:—That Joseph O. Hayhurst shall pay Cathleen Hayhurst the sum of seventy-five dollars per month on the 1st day of each and every month for a period of two years from date hereof and thereafter the sum of Thirty-seven and 50/100 dollars on the 1st day of each and every month following for a period of five years; This last named sum to be given Wendell Hayhurst or paid to his support.

"Third:—That Joseph O. Hayhurst shall pay Maud Hayhurst the sum of $10,000.00 in the manner following:

"By payment of cash or liberty bonds, any series, the sum of $5,000.00 at the execution and delivery thereof.

"On the 1st day of February, 1921, a cash payment of $5,000.00 with interest at six per cent thereon, from date hereof until paid.

"In consideration of the foregoing promises and agreements on the part of Joseph O. Hayhurst, Maud Hayhurst covenants and agrees to execute and deliver a quit claim deed in blank covering Lots numbered 11 and 12 of Block 12 of the town of Rolette according to the original plat thereof and hereby gives Joseph O. Hayhurst the right to insert the name of the grantee at any time hereafter.

"Second:—Maud Hayhurst further agrees to properly care for and properly educate the two children, Cathleen and Wendell.

"Maud Hayhurst further agrees that the foregoing property settlement is full payment, accord and satisfaction of all claims and demands of every kind, nature and description arising out of property rights, maintenance, support, alimony or suit money, that now or may hereafter exist.

"Further, Maud Hayhurst agrees that this settlement is made after

a careful examination of the books and records showing or pretending to show the financial condition of said Joseph O. Hayhurst.

"In witness whereof, Both parties have hereunto set their hand this 22nd day of September, 1919.

"(Signed)  Maud Hayhurst
"(Signed)  Joseph O. Hayhurst, M. D.

"Signed, sealed and delivered in the presence of

"(Signed)  D. J. McLennan."

The trial court found that this "contract was entered into by the defendant with the full knowledge and understanding on her part of all the financial circumstances of the plaintiff then existing and the same constituted a fair, just and equitable property settlement between the parties."

The trial court also found that "defendant pursuant to her aforesaid expressed determination to leave the plaintiff and live separate and apart from him wilfully, voluntarily and wrongfully and against the will and consent of the plaintiff deserted the plaintiff and has at all times since consistently maintained such desertion of the plaintiff."

It is the contention of the defendant that even if guilty of desertion in 1919 there was such "unreasonable lapse of time before the commencement of the action" that the divorce must be denied, citing § 4396 of the Compiled Laws. This section provides: "A divorce must be denied when there is an unreasonable lapse of time before the commencement of the action. Unreasonable lapse of time is such a delay in commencing the action as establishes the presumption that there has been connivance, collusion or condonation of the offense, or full acquiescence in the same with intent to continue the marriage relation, notwithstanding the commission of the offense set up as a ground of divorce. The presumption arising from lapse of time may be rebutted by showing reasonable grounds for the delay in commencing the action."

The desertion charged, as found by the trial court, began September, 1919. Wilful desertion must continue for one year before it becomes a ground for divorce. Comp. Laws, § 4386. Consequently no action could have been commenced before September 1920.

But desertion is a continuing offense. "The question whether the lapse of time in bringing an action for divorce—is reasonable or not is

one which the trial court must determine." Moffitt v. Moffitt, 128 Cal. App. 676, 18 P. (2d) 387, 388. In the case cited plaintiff did not begin an action for separate maintenance on the ground of desertion until more than twenty years after the desertion. For the greater portion of this time the plaintiff did not know where her husband was, but after she learned where he was, it was five years before she commenced the action. In Dee v. Dee, 87 Cal. App. 17, 261 P. 501, desertion continued for over twenty years. During most of this time plaintiff did not know where the defendant was, and the defendant never offered to return. The court held that wilful desertion is a continuing offense. Therefore the status of the parties did not change from the time the desertion commenced until date. The desertion did not end.

The provisions of § 4396 are a rule of evidence. Such lapse of time is a fact to take into consideration in determining whether there was "connivance, collusion or condonation of the offense, or full acquiescence of the same with intent to continue the marriage relations." The trial court found there was no collusion in the separation, that it was against the wishes of the plaintiff. In determining this the trial court took into consideration the lapse of time. Lapse of time might indicate that the separation was mutual, was with consent, and might be used as proof of such condition. The trial court found from the evidence introduced that the defendant deserted the plaintiff; that it was not a mutual separation; that the plaintiff never condoned such desertion, that there was no reconciliation between the parties at any time so as to cancel the desertion. The majority of the court, not including the writer, find as did the trial court, and therefore it is the judgment of this court that the defendant did wilfully desert the plaintiff, and continued such desertion during all of the years from 1919 until the present time.

The trial court, having determined the plaintiff was entitled to divorce on the ground of desertion, denied to the defendant any allowance out of the property of the plaintiff. It is true the trial court found that the property settlement made in 1919 was fair and equitable at that time and there is no question but what the plaintiff has completely and fully complied with all of the terms thereof. However he did not begin an action at the expiration of one year from the time the desertion commenced and therefore during all of the subsequent years

the defendant was his wife. This court is not satisfied that from the record the defendant is not entitled to some further allowance. Section 4405 of the Comp. Laws provides: "When divorce is granted, the court shall make such equitable distribution of the property of the parties thereto as may seem just and proper and may compel either of such parties to provide for the maintenance of the children of the marriage, and make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively; and the court may from time to time modify its orders in these respects."

It is the judgment of this court that it is just and equitable that reasonable and suitable allowance be made to the defendant in addition to the settlement made in 1919, due regard being had to the financial condition of both parties. The case is referred to the trial court for the taking of such testimony as will be necessary in order to determine what is fair and just under the circumstances.

The judgment is modified to this extent that the defendant is permitted to show what allowance should be made for her support during her life, or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively, and with this modification the judgment of the trial court that the plaintiff is entitled to divorce on the ground of desertion is affirmed.

BURKE, CHRISTIANSON, NUESSLE and MOELLRING, JJ., concur.